SOUTHWEST INDUSTRIAL IMPORT & EXPORT, INC. d/b/a Nationwide Supplies, A Division, Appellant,

v.

BORNEO SUMATRA TRADING CO., INC., Appellee.

No. 01–82–0888–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 23, 1984.

Rehearing Denied March 15, 1984.

Mark P. Blenden, William A. Petersen, Lapin, Totz & Mayer, Houston, for appellant.

John Garwood, Robert Dabney, Dabney & Garwood, Houston, for appellee.

Before WARREN, DOYLE and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

Southwest Industrial Import and Export, Inc., (hereinafter "Appellant" or "Buyer") appeals the granting of summary judgment for Borneo Sumatra Trading Co., Inc. (hereinafter "Appellee" or "Seller"), and the denial of its own motion for summary judgment. Buyer sued to recover payment it made to Seller for shipments of barbed wire allegedly in excess of the contract price.

In four points of error, Buyer claims that the trial court erroneously granted Seller's motion for summary judgment and erroneously refused to grant Buyer a new trial because of existing fact issues, and erred in refusing to grant its own motion for summary judgment.

On June 29, 1973, Buyer executed a written contract agreeing to buy a substantial quantity of Polish barbed wire from Seller at a price of $8.45 per reel of four-point wire and $7.28 per reel of two-point wire. The sales contract called for delivery in one or more shipments to the Port of Houston in "October/November, 1973 from the mill," with half of the price to be C.A.D. (cash against documents at time of delivery) and the remainder to be paid in thirty days. No wire was delivered at the agreed price.

Seller mailed Buyer a similar sales contract, signed by Seller, dated May 2, 1974, reflecting a price increase of $3.00 per reel, stating a delivery date of "May 1974 from the mill," and requiring payment in full upon delivery. The buyer neither signed nor returned this revised contract, but did accept the wire in three shipments and paid the higher price, according to the revised contract term.

On December 7, 1976, Buyer filed suit, alleging a breach of the June 29, 1973, contract by failure to deliver at the agreed prices. The buyer's claim for damages was the difference in the prices charged and paid and the prices agreed upon in the first contract, $19,425.74. Buyer also sought interest from June 1974, costs of court, and attorney's fees of $4,000.

In addition to a general denial, the seller's unverified answer asserted a number of affirmative defenses including estoppel by voluntary payment, waiver by failing to comply with notice requirements of both the contract and the Uniform Commercial Code, the two- and four-year statutes of limitations, laches, and failure to arbitrate.

Both Buyer and Seller filed a motion for summary judgment. Upon hearing the motions, the court on August 30, 1982, overruled Buyer's motion, granted Seller's motion and entered a take-nothing judgment in favor of Seller.

By its first two points of error, Buyer contends that the trial court erred in granting the motion in that Seller failed to sustain its burden of showing a breach of contract did not occur and in failing to prove that no fact issues existed as to any of the defenses upon which the judgment was sought.

■ By moving for summary judgment, a defendant assumes the burden of showing, as a matter of law, that the plaintiff has no cause of action against him. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Gibson v. John D. Campbell and Co.*, 624 S.W.2d 728, 731 (Tex.App.—Fort Worth 1981, no writ). He is entitled to prevail on his motion if he establishes, as a matter of law, that at least one essential element of the plaintiff's cause of action does not exist. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975). If the defendant moves on the basis of an affirmative defense, he must conclusively prove all essential elements of that defense. *Swilley v. Hughes*, 488 S.W.2d 64 (Tex.1972); *Gibson, supra.* On appeal, evidence favorable to the non-movant will be taken as true; every reasonable inference must be indulged in favor of the non-movant, and any doubt resolved in his favor. *Wilcox v. St. Mary's University of San Antonio, Inc.*, 531 S.W.2d 589 (Tex. 1975).

■ The summary judgment evidence shows that Buyer's vice-president, Rudy Guerrero, admitted under oath and without contradiction that he received a letter of transmittal and two counterparts of the revised contract, dated May 2, 1974. Above the dateline of this second contract are the typed words, "This contract voids and supercedes the contract dated June 29, 1973." The contract calls for delivery of the same type and quantity of goods as specified in the first contract; however, each reel was to be $3.00 more expensive, shipments were to be "May 1974 from the mill," and payment was to be in full at delivery. Under "Quantity, Description and Price," the following typed sentence was added: "Above prices include present bunker surcharge and are based on current increased freight rates." This contract was never executed or returned by any representative of Buyer, and the evidence

is conflicting as to whether the parties orally agreed to the substitution of this second contract.

On the other hand, Buyer admits receipt of and payment for the wire in three shipments according to the terms of the second contract. It contends such conduct was not a waiver of its rights under the 1973 contract because it had no choice but to accept and pay for the wire. Intention to waive may not be inferred from involuntary or compulsory acts. *Mayhew v. Isbell Lumber Co. v. Valley Wells Truck Growers' Ass'n*, 152 Tex.Cr.R. 578, 216 S.W.2d 225, 233 (1919, no writ).

In discussing the law of involuntary payment, the court, in *Spring Branch Bank v. Mengden*, 628 S.W.2d 130, 137 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), announced the general rule as follows:

> [M]oney voluntarily paid with full knowledge of all the facts cannot be recovered. The rationale for this rule is stated in *R.G. McClung Cotton Co. v. Cotton Concentration Co.*, 479 S.W.2d 733 (Tex. Civ.App.—Dallas 1972, writ ref'd n.r.e.):
>
>> [A] party who pays a claim is deemed to have made his own decision that it is justly due. If he thinks otherwise, he should resist. He should not pay out his money leading the other party to act as though the matter were closed, and then be in a position to change his mind and invoke the aid of the courts to get it back. Neither should he be allowed to avoid the inconvenience of immediate litigation by paying a claim and reserve to himself the privilege of suing for the money at a time and under circumstances of his own choosing, when his adversary may be at a disadvantage because of unavailability of records and witnesses. [citing authorities]
>
> However, the rule against recovery of voluntary payments is not applied rigidly in cases where the reasons for the rule do not exist. In some cases the payor is allowed to recover the money if he clearly never intended to surrender his position. (Emphasis deleted.)

Such is not the case here. Buyer does not allege, and the evidence does not show, that it reserved any rights or made any form of protest when it accepted the goods, other than Mr. Guerrero's vague statement that he thought he made to Seller's president, "I think this is unreal, unjust." Buyer admits that no written complaint to Seller was made prior to filing suit. Buyer also does not allege that it was ignorant of any material facts. Instead, it pleads that it paid the higher price under duress "in order to secure the goods and satisfy its customers."

The courts of Texas have consistently followed the rule that, as a matter of law, there can be no duress unless there is a threat to do some act which the party threatening has no legal right to do; there must be some illegal exaction or some fault or deception; and the restraint must be imminent and such as to destroy free agency without the present means of protection. *CF & I Steel Corp. v. Pete Sublett and Co.*, 623 S.W.2d 709, 712 (Tex.Civ.App.— Houston [1st Dist.] 1981, writ ref'd n.r.e.).

Although the deposition testimony and documents placed in evidence indicate that Seller would not have delivered the wire at the original 1973 contract price, Buyer has failed to raise the issue of duress. When pressed to explain why he believed his company was "under unusual pressure" to take the wire at the higher price, Mr. Guerrero answered:

> Well, we were in the business of buying and selling merchandise and, when you have people that depend on your buying and selling, then *it is possible that it is pressure.* You can't do business from an empty wagon. (Emphasis added.)

In spite of this professed need for the wire, the Buyer's answers to interrogatories show that the wire was placed in Buyer's warehouse with other wire it had on hand. Moreover, Buyer offered no proof of an attempt to find other barbed wire in substitution of the more expensive wire tendered by Seller and no proof that comparable

goods were unavailable. Mr. Guerrero's general statements in his affidavit that customers were waiting on the barbed wire and that the wire would not be delivered if Buyer did not pay the increased price are mere conclusions, ineffective to defeat summary judgment. *Life Insurance Co. of Virginia v. Gar-Dal, Inc.*, 570 S.W.2d 378, 381–382 (Tex.1978).

 Where a contract for the sale of goods involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, evidence of a course of performance accepted or acquiesced in without objection is relevant to determine the meaning of the agreement or to show a waiver inconsistent with such course of performance. Tex. Bus. & Com.Code Ann. § 2.208(a) & (c) (Vernon 1968). On the basis of the foregoing summary judgment evidence, we conclude, as a matter of law, that Buyer impliedly agreed to the increased price when it accepted and paid for each of the three shipments of wire. *See Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enterprises*, 625 S.W.2d 295, 298 (Tex.1981); *Perry & Co. v. Langbehn*, 113 Tex. 72, 252 S.W. 472 (1923).

We further conclude, as a matter of law, that Buyer's conduct constituted a waiver of timely delivery under the first contract. Tex.Bus & Com.Code Ann. § 2.602; 3A *Corbin on Contracts* § 755 (1960). *See Laredo Hides Co., Inc. v. H & H Meat Products Co., Inc.*, 513 S.W.2d 210 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.)

Thus, we hold that appellant's full performance under and acceptance of the benefits of the second contract proposed by Seller, without protest, and while under no duress to accept the terms of the proposed second contract, with knowledge that Seller intended that the second contract replace the first, constituted a legal waiver of any rights it might have had under the first contract. There being no fact issue to be resolved by the trier of fact, Seller was entitled to summary judgment. *Swilley v.*

*Hughes, supra.* We have considered Seller's contentions that it was also entitled to summary judgment by reason of limitations, laches, failure to arbitrate, and failure to mitigate damages, but we find those theories without merit. Buyer's points of error one and two are overruled.

As we have held that Seller was entitled to summary judgment by reason of Buyer's waiver of its rights under the written contract, we overrule Buyer's point of error contending that it was entitled to summary judgment, as well as its point of error contending that the trial court erred in refusing to grant it a new trial.

The judgment of the trial court is affirmed.