Sidney RAVKIND, Appellant,

v.

**MORTGAGE FUNDING CORPORATION**
and Chrysler First Financial Services
Corporation, Appellees.

No. 01–92–00182–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 4, 1994.

Robert D. Rapp, Houston, for appellant.

Douglas A. Sandvig, Houston, for appellees.

Before HUTSON–DUNN, MIRABAL and DUGGAN, JJ.

### OPINION

DUGGAN, Justice.

This is an appeal from a take nothing summary judgment in a usury case. The trial court found as a matter of law that the

transaction between appellant, Sidney Ravkind, and appellees, Mortgage Funding Corporation (MFC) and Chrysler First Financial Services Corporation (Chrysler), was an assignment of payments due under a note, and not a usurious second mortgage loan.

In three points of error, which he combines for argument, Ravkind asserts the trial court erred for three reasons in granting summary judgment. First, the evidence raises material questions of fact showing that the transaction was actually a second mortgage, not an assignment or sale at a discount of payments due under an existing note. Second, he urges, the evidence presented showed that the true nature of the transaction was a loan. Third, he contends, the evidence presented shows the parties intended the transaction to be a loan. We affirm the trial court's judgment.

In 1978, Ravkind and his wife, Margie (collectively, Ravkind), purchased a house and one-acre tract of land in Montgomery County financed by a 30–year note and mortgage with Gibraltar Savings and Loan (Gibraltar). The Ravkinds' monthly payment on the note was $770.56. In 1980, they sold the property to Mr. and Mrs. Ronald Mays under a contract for deed (the Ravkind/Mays contract). Under the contract, the Mays agreed to make 240 monthly payments of $2,390.10 to Ravkind, who agreed to use $770.56 of each payment received to pay the Gibraltar note. Ravkind agreed to execute a general warranty deed, to be held in trust, in favor of the Mays. The contract provided no personal recourse against the Mays if they failed to make payments, but simply forfeiture of their rights to the real property.

Some five and one-half years later, on April 22, 1986, Ravkind entered into the transaction with MFC that is the basis of this suit. The parties executed two instruments, an "Assignment of Right to Receive Payments Under Contract for Deed" (the assignment), and a "Purchase Agreement." On January 6, 1987, in accordance with the transaction's requirements, Ravkind executed a warranty deed in favor of MFC. Ravkind did not sign a promissory note.

Under the terms of the assignment and agreement, MFC paid Ravkind $58,000 for the right to receive the next 60 monthly net payments of $1,619.54 ($2,390.10 less Ravkind's first lien payment of $770.56 to Gibraltar) due from the Mays. Approximately one year later, MFC in turn sold 48 of the net payments under the agreement to Chrysler for $60,386.

In June 1987, the Mays ceased making payments under their contract for deed. Ravkind did not advise MFC of the Mays' default, but continued to transmit to MFC payments of $1,619.54, the net payment due. In December 1989, Ravkind made a prepayment in full to MFC and Chrysler.

On March 8, 1990, Ravkind sued MFC and Chrysler, alleging that MFC had made a $58,000 second mortgage loan to Ravkind, to be repaid at $1,619.54 per month for 60 months, with a 15 percent prepayment penalty. Ravkind alleged that because the interest paid was equivalent to 20.25 percent and the 15 percent prepayment charge was prohibited by law, the transaction was usurious. Ravkind sought recovery of twice the amount of the interest paid, the 15 percent prepayment penalty, and the principal amount of the loan, plus prejudgment interest, attorney's fees, and costs. MFC and Chrysler both answered with general denials, and MFC counterclaimed against Ravkind and cross-filed against Ravkind's wife; Chrysler cross-claimed against MFC for indemnity.

MFC and Chrysler each filed motions for summary judgment. MFC asserted in its motion for summary judgment, accompanied by its president's affidavit, that Ravkind did not sign a promissory note, and that MFC did not loan money to Ravkind, but purchased at a discount the right to receive payments made by the Mays under the existing Ravkind/Mays contract. The motion further asserted that (1) Ravkind received the money due under the contract for deed from the Mays, paid a portion to the first lienholder, and forwarded the assigned $1,619.54 monthly to MFC until June 1987; (2) Ravkind conveyed the real property that was the subject of the Ravkind/Mays contract to MFC to protect MFC's interest in the event the Mays failed to pay; and (3) Ravkind had no absolute obligation to repay MFC, only a

*contingent* obligation to repurchase MFC's interest in the event the Mays either prepaid the contract or defaulted under the contract. MFC further urged that a contract does not become usurious simply because it contains a contingent repurchase obligation, and that where the holder of an instrument discounts the instrument and sells it to a third party, the transaction does not become usurious by virtue of the discount.

MFC attached to its motion for summary judgment the documents which collectively defined the transaction between Ravkind and MFC. They were: (1) the Ravkind/Mays contract; (2) the assignment from Ravkind to MFC; (3) the warranty deed from the Ravkinds to MFC; (4) the purchase agreement between Ravkind and MFC; and (5) the Ravkind letter dated April 28, 1986, notifying the Mays that Ravkind had sold to MFC the right to receive the Mays' payments, subject to the Mays' right under the Ravkind/Mays contract and to the first lienholder's rights. In its motion for summary judgment, Chrysler incorporated by reference MFC's summary judgment evidence and argued that the documents clearly reflect that Ravkind had no absolute obligation to repay MFC, or in turn, Chrysler.

In response, Ravkind swears that he and his wife were personally liable for the monies being loaned by MFC. His affidavit does not challenge or controvert the facts set out in MFC's affidavit. Contrary to MFC's earlier sworn allegations and exhibits tendered with its motion for summary judgment, Ravkind's allegations are not factual, but conclusory only.[1]

■ The trial court first denied, but then reconsidered and granted, both defendants' motions for summary judgment. MFC dismissed its counterclaim against Ravkind and its third-party action against Margie Ravkind; Chrysler dismissed its cross-action against MFC. Having once entered its order denying MFC's and Chrysler's motions for summary judgment, the trial court was authorized, either on its own or the movants' motions, to rescind its prior order and grant the motions for summary judgment. *Bennett v. State Nat'l Bank,* 623 S.W.2d 719, 721 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *R.I.O. Sys. v. Union Carbide,* 780 S.W.2d 489, 492 (Tex.App.—Corpus Christi 1989, writ denied) (denial of a motion for summary judgment is interlocutory; hence the trial judge may change or modify the original order at any time).

■ The trial court's order is silent as to the reason or reasons for granting summary judgment. Where a trial court does not indicate a particular ground for granting a summary judgment, a court of appeals must uphold the judgment on appeal if it is proper on any ground asserted in the motion. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989); *Home Indem. Co. v. Pate,* 814 S.W.2d 497, 500 (Tex.App.—Houston [1st Dist.] 1991, writ denied). To prevail on a motion for summary judgment, a defendant need only disprove, as a matter of law, one element of the plaintiff's cause of action. *Southwest Indus. Import v. Borneo Sumatra Trading Co.,* 666 S.W.2d 625, 627 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). In reviewing the granting of a motion for summary judgment, this Court will take all evidence favorable to the nonmovant as true. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *Goldberg v. U.S. Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Every reasonable inference will be indulged in favor of the nonmovant, and any reasonable doubt will be resolved in his favor. *Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex.1988); *Goldberg,* 775 S.W.2d at 752. The movant has the burden of showing that there are no genuine issues of material fact, and that he is entitled to judgment as a matter of law. *MMP, Ltd.,* 710 S.W.2d at 60; *Goldberg,* 775 S.W.2d at 752.

■ To establish usury, a party must prove: (1) a loan of money; (2) an absolute

---

1. In his affidavit, Ravkind states:
   While I am an attorney, I had no particular knowledge of the usury laws in 1986. I have never been involved in any usury case previously. Upon the payoff of the loan in December 1989, the amount of the payoff was considerably more than I anticipated, and I did further investigate the matter. It is clear to me now that the transaction was clearly a loan and clearly usurious.

obligation that the principal be repaid; and (3) the exaction of a greater compensation for the use of the money by the borrower than is permitted by law. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). The sale of a note at a discount does not constitute a loan, and usury laws are not applicable to such a transaction. *Redman Indus. v. Couch,* 613 S.W.2d 787, 790 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Therefore, apart from interest rates, Ravkind fails to prove an essential element of a cause of action for usury if the summary judgment proof shows as a matter of law either that there was (1) no loan of money, or (2) no absolute obligation that the principal be repaid.

Ravkind does not deny the execution or validity of any of the Ravkind/MFC documents which MFC filed as exhibits and alleged to define the transaction. Neither does he dispute MFC's pleading and affidavit proof that it is in the business of purchasing at a discount either existing notes or streams of payment under existing notes. Ravkind's own exhibit shows that the Ravkind/Mays contract for deed and promissory note had been in existence for some five and a half years before the Ravkind/MFC transaction in question. Ravkind does not contend that the documents failed to describe accurately the true nature of the transaction, or that they were sham or subterfuge, or part of a scheme or artifice to disguise the nature of the transaction. Neither does he claim there was fraud, nor plead that the documents were ambiguous. Thus, we can examine the documents and ascertain whether they show a loan transaction between Ravkind and MFC, or instead, whether they show an assignment of payments under a note with a contingent obligation by Ravkind to repay MFC.

Ravkind asserts that the purchase agreement on its face is evidence that the true nature of the transaction is a loan, and not an assignment of proceeds. Ravkind points out that the purchase agreement provides for "full recourse" against Ravkind if the payment obligations are not met; that copies of letters annexed to the agreement require Ravkind to list MFC as second mortgagee on his homeowners insurance; that copies of the insurance policies list both MFC and Chrysler as second mortgagees, not note discounters; and that the purchase instrument itself describes the instrument as a "valid second mortgage lien against the real property described therein."

These provisions of the agreement are not determinative of the nature of the transaction, and do not make it more likely than not that the transaction is a loan, rather than the purchase of a debt instrument at a discount. In the normal course of purchasing real estate notes or debt instruments, it is the usual practice and to be expected that the purchaser get the benefit of collateral securing the obligations purchased. The holder of a note or debt instrument is routinely listed as an additional insured on collateral securing the original obligor's obligations. Moreover, in the purchase agreement, each page contains a parenthetical footnote stating, "For the purposes of this transaction, the word MORTGAGE is construed to mean CONTRACT FOR DEED and MORTGAGEE to mean PURCHASERS and SELLERS."

█ Appellees urge that the documents expressly and unambiguously evidence that the transaction was the assignment of rights to receive note payments purchased by MFC at a discount, with a contingent obligation by Ravkind to repay MFC. We agree. The assignment contains an obligation on the part of Ravkind to repurchase MFC's interest in the contract for deed if: (1) the Mays prepay or breach the contract; or (2) the Ravkinds breach a warranty. We find this language clear to support the trial court's conclusion that the transaction was not usurious. A factor that courts consider when determining usury is whether repayment was based on a contingency. *Catalina v. Blasdel,* 881 S.W.2d 295, 296–97 (Tex.1994) (reversing court of appeals holding that usury does not require an absolute obligation to repay principal). According to the terms of the contract, the Ravkinds' obligation to repurchase did not arise unless the Mays prepaid or defaulted under the Ravkind/Mays contract, or Ravkind breached a warranty. Accordingly, Ravkind had only a contingent obli-

gation at the time the contract was formed. *Bray v. McNeely,* 682 S.W.2d 615, 619 (Tex. App.—Houston [1st Dist.] 1984, no writ). Moreover, the assignment provides that if the contingency occurs, and Ravkind fails to repurchase MFC's interest, MFC's recourse is against the real property only, and not against Ravkind.

From an examination of the summary judgment evidence in its entirety, we find that the transaction between Ravkind and MFC was an assignment of payments under a note, purchased at a discount by MFC, and that Ravkind had only a contingent obligation to repay MFC. Because appellees disproved an element of Ravkind's case, the trial court did not err in granting the summary judgment. We overrule appellant's points of error.

We affirm the trial court's judgment.