**COMBINED SPECIALTY INSURANCE COMPANY,**
Appellant,

v.

**Tina DEESE, Appellee.**

**No. 05–06–01580–CV.**

Court of Appeals of Texas,
Dallas.

Oct. 8, 2008.

Dean George Pappas, Pappas & Suchma, PC, Mary M. Markantonis, Dean G. Pappas & Associates, P.C., Houston, TX, for Appellant.

Jeffrey L. Raizner, Michael P. Doyle, Jack G. Burleigh, Doyle Raizner, LLP, Houston, TX, Matthew Bruce Lewis, Rogers, Booker, Trevino & Lewis, P.C., Richardson, TX, for Appellee.

Before Justices MORRIS, FITZGERALD, and LANG.

## OPINION

Opinion By Justice FITZGERALD.

Appellant filed this suit for judicial review of a decision by an appeals panel of the Texas Workers' Compensation Commission. The trial court dismissed the case on appellee's second plea to the jurisdiction and awarded appellee her attorneys' fees and expenses. We reverse and remand.

## I. BACKGROUND

### A. Proceedings before the Texas Workers' Compensation Commission

Appellee Tina Deese was the general manager of a hotel. In 2003 she made a claim for workers' compensation benefits, alleging that she had sustained a work-related back injury. Appellant Combined Specialty Insurance Company ("CSI") was her employer's workers' compensation insurance carrier. CSI contested Deese's entitlement to workers' compensation benefits. A contested case hearing was held before a hearing officer of the Texas Workers' Compensation Commission ("TWCC").[1] The officer found that Deese had sustained a compensable injury and that she had suffered a disability that continued through the date of the contested case hearing. He ordered CSI to pay Deese medical and income benefits in accordance with his decision.

CSI attempted to appeal the hearing officer's decision to an appeals panel of the TWCC. The appeals panel concluded that CSI's appeal was untimely and that the

hearing officer's decision was therefore final. To avoid redundancy, we will recite the details of CSI's unsuccessful appeal to the appeals panel in our legal analysis below.

### B. Judicial proceedings

CSI filed a lawsuit in Dallas County district court seeking to set aside both the appeals panel's decision that CSI's appeal was untimely and the hearing officer's decision that Deese suffered a compensable injury and disability. Deese counterclaimed for attorneys' fees pursuant to section 408.221(c) of the Texas Labor Code. Meanwhile, a second contested case hearing was held before a TWCC hearing officer to determine whether Deese's work-related disability had continued after the date of the first contested case hearing. The hearing officer found that the disability had continued through the date of the second contested case hearing, and a TWCC appeals panel affirmed that decision on the merits. CSI amended its petition in the trial court to add a request that this second appeals panel decision be set aside as well.

Deese filed a combined plea to the jurisdiction and motion for summary judgment in which she contended that CSI's failure to timely appeal the first appeals panel decision deprived the court of jurisdiction over CSI's claims relating to the first hearing officer's decision. She also contended that she was entitled to summary judgment on the merits as to CSI's challenge of the second appeals panel decision. The trial judge denied the plea and motion.

Deese then filed a second plea to the jurisdiction and motion for summary judg-

---

1. In 2005 the Texas Legislature amended the workers' compensation laws, abolished the TWCC, and vested the TWCC's authority in the Division of Workers' Compensation of the Texas Department of Insurance. *HealthSouth*

*Med. Ctr. v. Employers Ins. Co. of Wausau,* 232 S.W.3d 828, 829–30 n. 1 (Tex.App.–Dallas 2007, pet. denied). All agency proceedings relevant to this appeal took place before the 2005 amendments went into effect.

ment. In her second plea, she raised a new argument that the district courts of Travis County had exclusive jurisdiction over CSI's claims. She also reiterated her argument that jurisdiction was lacking because CSI's failure to timely appeal the first hearing officer's decision amounted to an incurable failure to exhaust administrative remedies. The trial judge signed an order on April 11, 2006 denying Deese's request for summary judgment, but stating that the case should be "transferred, abated, or dismissed." The judge directed the parties to file "appropriate pleadings and/or motions" to that end. CSI filed a motion for rehearing of the second plea to the jurisdiction or in the alternative motion to reform the trial court's April 11 order. The trial judge then signed a new order granting the second plea to the jurisdiction outright. On August 29, 2006, the trial judge signed a final judgment dismissing CSI's causes of action for lack of jurisdiction, ordering CSI to pay Deese medical and income benefits in accordance with the final decision of the hearing officer, and granting Deese's request for her reasonable and necessary attorneys' fees. The trial court awarded Deese roughly $65,000 in attorneys' fees and expenses by a separate order signed that same day.

The trial court denied CSI's motion for new trial, and CSI appealed.

## II. STANDARD OF REVIEW

■ Whether a court has subject-matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). A plea to the jurisdiction can be based on the pleadings or on evidence. *Id.* When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id.* When a plea to the jurisdiction challenges

the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to determine if a fact issue exists. *Id.* at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228.

## III. ANALYSIS

CSI raises seven issues on appeal. CSI's first, third, and fourth issues address Deese's argument that the district courts of Travis County have exclusive jurisdiction over CSI's claims. Its second issue addresses Deese's alternative argument that the trial court lacked jurisdiction because CSI's appeal to the appeals panel was untimely. In its fifth issue, CSI contends that denial of its right to a jury trial contesting the award of benefits to Deese would violate its constitutional rights to equal protection and due process. CSI's sixth and seventh issues contest the award of attorneys' fees.

## A. Exhaustion of administrative remedies

■ We address CSI's second issue first. CSI contends that the trial judge granted Deese's second plea to the jurisdiction solely on the theory that the district courts of Travis County have exclusive jurisdiction over CSI's claims, and that we should therefore consider only this theory in support of the judgment. We disagree. Deese's second plea was based on two independent grounds: exclusive jurisdiction in Travis County and failure to exhaust administrative remedies. The trial court's order granting the second plea does not state the basis for the court's ruling. Accordingly, we may affirm on any basis preserved in the record. *See Crocker v. Am. Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 930 (Tex.App.–Dallas 2007, no

pet.) (noting that a summary judgment may be affirmed on any ground preserved in the motion); *see also Ravkind v. Mortgage Funding Corp.*, 881 S.W.2d 203, 205 (Tex.App.–Houston [1st Dist.] 1994, no writ) (trial court has power to grant summary judgment on a ground that it has previously denied).

### 1. *Effect of an untimely appeal to the TWCC appeals panel*

CSI argues that it adequately exhausted its administrative remedies before filing this suit for judicial review simply by obtaining a final decision from the TWCC appeals panel, even if its appeal to the appeals panel was not timely. Deese contends that an aggrieved party fails to exhaust its administrative remedies if its appeal to the appeals panel is not timely. We agree with Deese.

■ A party's failure to exhaust the administrative remedies provided under Texas's workers' compensation scheme deprives the trial court of jurisdiction over that party's request for judicial review. TEX. LAB.CODE ANN. § 410.251 (Vernon 2006); *Cont'l Cas. Co. v. Rivera*, 124 S.W.3d 705, 712 (Tex.App.–Austin 2003, pet. denied). Judicial review is permitted only after the party has exhausted administrative review through a contested case hearing or arbitration, followed by an appeal to a TWCC appeals panel. *Rivera*, 124 S.W.3d at 712; *see also* TEX. LAB.CODE ANN. § 410.302(b) (limiting the scope of judicial review to "issues decided by the appeals panel and on which judicial review is sought"). In *Rivera*, the Austin Court of Appeals held that the jurisdictional prerequisite of exhaustion of administrative remedies includes a requirement that the appeal to the appeals panel must have been timely. 124 S.W.3d at 712; *accord Frank v. Liberty Ins. Corp.*, 255 S.W.3d 314, 320 (Tex.App.–Austin 2008, pet. filed). The trial court had dismissed a carrier's

suit for judicial review on the claimant's plea to the jurisdiction because the record demonstrated that the appeals panel had correctly dismissed the carrier's administrative appeal as untimely, and the court of appeals affirmed. *Rivera*, 124 S.W.3d at 709–12.

Less than three weeks after *Rivera* was decided, the El Paso Court of Appeals issued a conflicting opinion in which it held that the timeliness of the appeal to the TWCC appeals panel is not part of the exhaustion requirement. In *Cervantes v. Tyson Foods, Inc.*, claimant Cervantes lost his contested case hearing and attempted to appeal. 130 S.W.3d 152, 153 (Tex.App.–El Paso 2003, pet. denied). The TWCC appeals panel dismissed his appeal as untimely, and Cervantes timely sought judicial review of that dismissal, arguing that TWCC staff negligence had caused his TWCC appeal to be late. *Id.* at 154. The district court dismissed on Tyson's plea to the jurisdiction, but the court of appeals reversed, holding that Cervantes had sufficiently exhausted his administrative remedies simply by obtaining a final decision from the appeals panel. *Id.* at 157–58 & n. 2. The *Cervantes* court held that the trial court's determination of the timeliness of Cervantes's TWCC appeal constituted a premature decision of the merits of Cervantes's claim. *Id.* at 157–58.

After considering both rules, we agree with the *Rivera* court's holding that exhaustion of administrative remedies requires a party to make a timely appeal to the TWCC appeals panel. Thus, the trial judge correctly dismissed this case for failure to exhaust administrative remedies if there is no genuine fact issue and the TWCC appeals panel correctly dismissed CSI's administrative appeal as untimely.

### 2. *The timeliness of CSI's appeal to the TWCC appeals panel*

We next consider whether Deese demonstrated as a matter of law that CSI's appeal to the TWCC appeals panel was untimely. By statute, CSI had to file a written request for appeal with the TWCC "not later than the 15th day after the date on which the decision of the hearing officer" was received. TEX. LAB.CODE ANN. § 410.202(a). Under the TWCC's version of the mailbox rule, a request for review of a hearing officer's decision will be presumed timely filed "if it is: (1) mailed on or before the 15th day after the date of receipt of the hearing officer's decision . . . and (2) received by the [TWCC] not later than the 20th day after the date of receipt of the hearing officer's decision." 28 TEX. ADMIN. CODE § 143.3(e).[2] By statute, the TWCC was required to exclude Saturdays, Sundays, and legal holidays from its calculation of the fifteen-day appeal deadline. TEX. LAB.CODE ANN. § 410.202(d).

The appeals panel concluded that CSI did not timely perfect its appeal based on the following chronology:

| August 12, 2003 | CSI was deemed to have received the hearing officer's decision on this date, pursuant to TWCC regulations.[3] |
|---|---|
| August 25, 2003 | CSI mailed its request for review to the TWCC. |
| September 3, 2003 | This was the 15th day after CSI's deemed receipt of the decision. |
| September 10, 2003 | CSI filed a faxed copy of its request with the TWCC on this date, the twentieth day after CSI's deemed receipt of the decision. |
| October 3, 2003 | The TWCC received the request for review that CSI had mailed on August 25. |

Although Deese argues that the deadlines should have run from August 11 instead of August 12, the appeals panel implicitly found that the decision was placed in CSI's Austin representative's box on August 11, which made August 12 the starting date under rule 102.5(d). Our standard of review requires us to credit the evidence favoring CSI as to the date and manner of its receipt of the decision, so we accept August 12 as the starting date. *See Miranda*, 133 S.W.3d at 228 (standard of review for a jurisdictional plea based on evidence mirrors the summary-judgment standard of review). The appeals panel held that the mailbox rule extended the filing deadline from fifteen to twenty days only for the physical copy of the request that was actually mailed to the TWCC. It concluded that CSI's mailed request for review was untimely because that physical copy arrived well after the twentieth day. And it concluded that the copy of the request for review that CSI faxed and filed on the twentieth day was also late because that faxed copy did not get the benefit of the mailbox rule's five-day extension.

CSI argues that it complied with the mailbox rule because its evidence showed (1) it mailed its request for review to the correct address within the fifteen-day deadline and (2) the TWCC received the faxed copy, identical to the mailed request for review, on the twentieth day. This is a quarrel with the TWCC's interpretation of its own mailbox rule, so we must consider whether deference to the agency's interpretation of the mailbox rule is required.

**2.** This provision was found in rule 143.3(c) when CSI attempted to perfect its appeal to the appeals panel in 2003, but it has been renumbered rule 143.3(e) since then. Because the amendment left the wording unchanged, we cite the current rule.

**3.** Although the appeals panel's decision does not expressly state that the fifteen days began to run on August 12 pursuant to rule 102.5, its recitation of the deadlines assumes a starting date of August 12. *See* 28 TEX. ADMIN. CODE § 102.5(d) (rules governing deemed date of receipt).

### a. Courts give deference to an agency's reasonable interpretation of its own rules.

■ "Administrative rules are ordinarily construed like statutes." *Lewis v. Jacksonville Bldg. & Loan Ass'n,* 540 S.W.2d 307, 310 (Tex.1976). Thus, our goal is to give effect to the drafters' intent, derived from the rule's language, history, and purpose, and from the consequences of alternate constructions. *Cash Am. Int'l Inc. v. Bennett,* 35 S.W.3d 12, 16 (Tex. 2000). We presume that the drafters intended their handiwork to be effective and to yield just and reasonable results. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001).

■ We modify our approach to the interpretation of an administrative rule when the administrative agency responsible for that rule has given its own interpretation. The supreme court has embraced the principle that an administrative agency's "interpretation of its own regulations is entitled to deference by the courts." *Pub. Util. Comm'n v. Gulf States Utils. Co.,* 809 S.W.2d 201, 207 (Tex.1991). The court went on to explain this judicial deference as follows:

> Our review is limited to determining whether the administrative interpretation is plainly erroneous or inconsistent with the regulation.... However, if the [agency] has failed to follow the clear, unambiguous language of its own regulation, we must reverse its action as arbitrary and capricious.

*Id.* (internal quotations and citations omitted). In that case, the court rejected the agency's interpretation of its own regulation, concluding that the interpretation was contrary to the regulation's plain language. *Id.* The supreme court reiterated these principles several years later:

> While we defer to the [Texas Workers' Compensation] Commission's interpreta-

tion of its own regulation, we cannot defer to an administrative interpretation that is plainly erroneous or inconsistent with the regulation.... If the Commission does not follow the clear, unambiguous language of its own regulation, we reverse its action as arbitrary and capricious.

*Rodriguez v. Serv. Lloyds Ins. Co.,* 997 S.W.2d 248, 254–55 (Tex.1999) (internal quotations and citations omitted). In *Rodriguez,* once again, the court rejected an agency's interpretation of its own regulation. *Id.* at 254–56. The TWCC regulation at issue provided that the first impairment rating assigned to an injured worker was considered final if the rating was not disputed within ninety days after the rating was assigned. *Id.* at 251. TWCC appeals panels recognized several exceptions to the ninety-day deadline, even though the regulation provided for no exceptions on its face. *Id.* at 254. The supreme court majority held that these exceptions were plainly erroneous in light of the language of the regulation and certain comments made by the TWCC when it published the regulation in the Texas Register. *Id.* at 254–56.

■ The Texas Supreme Court has not further fleshed out the meaning of the "plainly erroneous" test set forth in *Public Utility Commission* and *Rodriguez,* but other authorities, including a recent decision from this Court, confirm that an agency interpretation is "plainly erroneous" if it is unreasonable. For example, in the *Rodriguez* case itself, three justices joined the chief justice in a separate concurring opinion in which he wrote, "The Commission's interpretation of its own rule is entitled to deference by the courts so long as it is ***reasonable.***" *Id.* at 257 (Phillips, C.J., joined by Hecht, Hankinson, and O'Neill, JJ.) (emphasis added). Recently, we held that an agency's interpretation of a statute

it is charged with enforcing is entitled to "serious consideration" by the courts, "so long as that construction is reasonable and does not contradict the plain language of the statute." *Sanders v. Am. Protection Ins. Co.*, 260 S.W.3d 682, 684–85 (Tex. App.–Dallas 2008, no pet. h.). Similarly, we defer to an agency's interpretation of its own rules "as long as its interpretation is reasonable." *Id.* (citing *Pub. Util. Comm'n*, 809 S.W.2d at 207). Our conclusion that we defer to an agency interpretation only if it is reasonable has already been embraced by other courts of appeals. *S. Ins. Co. v. Brewster*, 249 S.W.3d 6, 15 (Tex.App.–Houston [1st Dist.] 2007, pet. denied) ("[W]e must defer to the TWCC's interpretation of its own rules, as long as its interpretation is reasonable."); *Perry Homes v. Strayhorn*, 108 S.W.3d 444, 448 (Tex.App.–Austin 2003, no pet.) ("We will defer to an agency's interpretation as long as it is reasonable and does not contradict the plain meaning of the statute.").

 In determining whether an agency interpretation of a regulation is reasonable, we cannot consider the regulation in isolation, but must consider how the regulation operates within the regulatory and statutory framework as a whole. *Tenn. Gas Pipeline Co. v. Rylander*, 80 S.W.3d 200, 205 (Tex.App.–Austin 2002, pet. denied). An interpretation that defeats the purpose underlying the regulation is generally unreasonable. *See Tex. Citrus Exch. v. Sharp*, 955 S.W.2d 164, 170–71 (Tex.App.–Austin 1997, no pet.) (rejecting agency interpretation that defeated the legislative purposes underlying the statute in question); *see also Sanders*, 260 S.W.3d at 685–86 (deferring to agency interpretation because, among other things, that interpretation gave effect to the legislature's goal in adopting the workers' compensation scheme).

 As illustrated by the supreme court's decisions in *Public Utility Commission* and *Rodriguez*, the principle of judicial deference does not require blind obeisance to every agency determination. The Austin Court of Appeals, which decides many appeals arising from administrative decisions, recently rejected a TWCC interpretation of its own rule because that interpretation was unreasonable when viewed against the regulatory scheme as a whole. TWCC rules required it to send copies of all orders both to the claimant and to the claimant's attorney, if any. *Frank*, 255 S.W.3d at 317. Claimant Frank, who was represented by counsel, lost her hearing before a hearing officer, but the TWCC sent the hearing officer's order to Frank alone, and not to her attorney. *Id.* at 317–18. Frank's attorney did not find out about the order until thirty-seven days after the TWCC mailed the decision to Frank. *Id.* at 318. Even though he filed a request for review with the appeals panel that same day, the appeals panel dismissed the appeal as untimely, interpreting the fifteen-day deadline to run from Frank's receipt of the order. *Id.* at 318–19. The trial court dismissed Frank's suit for judicial review, but the Austin Court of Appeals reversed, concluding that the TWCC's interpretation of the fifteen-day deadline was so unreasonable that it was not entitled to deference. *Id.* at 324–27. The court noted that the dual-notice regulation was plainly intended to protect claimants' rights by ensuring that both the claimant and his or her attorney received copies of all written communications from the TWCC. *Id.* at 325. The appeals panel unreasonably eviscerated the purpose of the dual-notice regulation by holding that the fifteen-day appeal deadline was triggered when the TWCC sent the decision to the claimant without regard to when (or even if) it sent the decision to the claimant's counsel. *Id.* Ac-

cordingly, the court of appeals rejected the TWCC's unreasonable interpretation of its regulations, concluding that the fifteen-day deadline did not begin to run until the TWCC sent the decision to both the claimant and her attorney. *Id.*

### b. The TWCC's interpretation of rule 143.3 is unreasonable.

We now turn to a question of first impression, whether the TWCC's interpretation of its own mailbox rule is unreasonable and, therefore, plainly erroneous. Rule 143.3 provides that a request for review will be presumed timely "if it is: (1) mailed on or before the 15th day after the date of receipt of the hearing officer's decision . . . and (2) received by the [TWCC] not later than the 20th day after the date of receipt of the hearing officer's decision." 28 TEX. ADMIN. CODE § 143.3(e). The first part of the rule expressly refers to mailing as the method of delivery. The second part anticipates receipt of the document by mail, but it does not exclude receipt by other means, such as personal delivery or fax, in the event of nondelivery of the mail. Nevertheless, the TWCC appeals panel effectively construed the word "it" to mean that the same piece of paper must be both sent and received to satisfy both the fifteen-day mailing rule and the twenty-day receipt rule; i.e., the same physical document that was mailed to the TWCC as a party's request for review must be received by the twentieth day. CSI argues that the timely mailing of the request for review, coupled with the TWCC's receipt of an identical copy of the request on the twentieth day, satisfies the mailbox rule.

We consider first the purposes sought to be accomplished by the mailbox rule and the consequences of the TWCC's interpretation of that rule. *See* TEX. GOV'T CODE ANN. § 311.023(1), (5) (Vernon 2005). The

TWCC's comments in the Texas Register that accompanied the proposal of the mailbox rule do not address the issue we face. The TWCC commented only that the amendments were needed "because the dates of receipt, by law, establish time limits for actions by the appeals panel." 16 Tex. Reg. 5317, 5317 (1991) (to be codified at 28 TEX. ADMIN. CODE § 143.3) (proposed Sept. 27, 1991). This demonstrates that one purpose of the rule is to establish the "trigger" for appeals panel action. However, we discern two other clear purposes underlying the rule. In addition to the purpose set forth in the Texas Register, a second purpose is to serve the parties' convenience by allowing them to file a document by mailing it within the same time period that they are allowed to file documents in person. This second purpose is inherent in the adoption of the mailbox rule; if the TWCC had not so intended, it would have adopted a rule that a document is filed only when it is received by the agency, as several other agencies have. *See, e.g.,* 4 TEX. ADMIN. CODE § 1.5(a) (department of agriculture); 16 TEX. ADMIN. CODE § 1.24(b) (legal division of the railroad commission); 16 TEX. ADMIN. CODE § 22.71(e) (public utility commission). A third purpose of the rule is to maintain a firm outside deadline (the twentieth day) for receipt of documents by the agency.

The TWCC's rigid interpretation of the mailbox rule serves the first and third purposes of the rule: establishing a clear date of receipt to act as a trigger for appeals panel action, and maintaining an absolute outside deadline (the twentieth day) by which the TWCC must receive a request for review. But that interpretation substantially frustrates the second purpose, which is to give parties the convenience of filing by mail, because of the "sudden death" implications of late delivery. Although mail is often delivered within five business days after mailing,

occasionally it takes longer. Sometimes mail is lost entirely. Under the TWCC's interpretation, a party seeking to file a request for review by mail would be gambling the entire appeal on the vagaries of the postal service. Such an interpretation makes the mailbox rule unreasonable and but a trap for the unwary. Any advantage or benefit the rule affords is negated by the extreme penalty resulting from even the remote possibility of tardy delivery by the postal service. In short, the TWCC's interpretation appears unreasonable in light of the purposes of the rule and the consequences that would flow from that interpretation.

██ Moreover, the TWCC's interpretation is unreasonable because it disregards the principle that regulations are to be construed as a whole, without viewing any word in isolation. *Tenn. Gas Pipeline Co.*, 80 S.W.3d at 205. Were we to construe the rule, as did the TWCC, as requiring that the copy received be delivered by the United States Postal Service, we would be focusing on only one word of the rule, the term "it," and we would in turn be limiting the term "it" to the physical document denominated as CSI's request for review. However, if we construe the rule as allowing the receipt of an identical faxed copy of the request for review, under the facts of this case, we would not be confining our construction to a term in isolation, but would instead be interpreting the language within the entire framework of the rule so as to give effect to its purposes discussed above.

██ Additionally, our conclusion that the TWCC's interpretation is unreasonable is reinforced by judicial decisions rejecting that interpretation of the substantially similar mailbox rule found in the Texas Rules of Civil Procedure.[4] Those decisions firmly reject the "same piece of paper" interpretation adopted by the TWCC appeals panel in this case. Texas Rule of Civil Procedure 5 provides that a document will be deemed timely filed if it is mailed "to the proper clerk" on or before the deadline and if "the same" is received no more than ten days late. TEX.R. CIV. P. 5. In the leading case of *Stokes v. Aberdeen Insurance Co.*, the Texas Supreme Court expressly rejected "the court of appeals' holding [under rule 5] that the clerk must receive the same piece of paper the party actually mailed." 917 S.W.2d 267, 268 (Tex.1996) (per curiam). "We construe the words 'the same' in the rules to mean an original or any copy of the motion sufficient for filing." *Id.* In that case, the parties mailed their motion for new trial to the trial judge (and not to "the proper clerk") on the deadline, and they simultaneously sent a copy to the clerk by private overnight delivery service. *Id.* at 267. The supreme court held that the motion was timely filed and thus extended the appellate deadlines, even though the litigants relied on one copy of the motion to satisfy the mailing requirement and a different copy to satisfy the receipt requirement. *Id.* at 268. In another case, the court of appeals held that a party sufficiently complied with rule 5 by timely mailing an appeal bond to perfect an appeal from a justice court and then faxing the appeal bond to the court less than ten days after the deadline—even though the mailed original never arrived at the court. *Williams v. Schneiber*, 148 S.W.3d 581,

---

4. The principles of statutory construction apply to the rules of civil procedure, just as they apply to administrative rules and regulations. *BASF Fina Petrochemicals Ltd. P'ship v. H.B. Zachry Co.*, 168 S.W.3d 867, 871 (Tex.App.– Houston [1st Dist.] 2004, pet. denied). It follows that decisions interpreting the rules of civil procedure are relevant to the interpretation of similar administrative rules and regulations.

584–86 (Tex.App.–Fort Worth 2004, no pet.).

In *Stokes* and *Williams,* the courts concluded that interpreting rule 5 to require that the same piece of paper be used to satisfy every element of the mailbox rule was "too restrictive." *Stokes,* 917 S.W.2d at 268; *Williams,* 148 S.W.3d at 585. We agree, and we draw the same conclusion with respect to the TWCC's wooden interpretation of its mailbox rule in this case. We also note the well-settled judicial understanding that the worker's compensation law should be "liberally construed to effectuate the remedies which it grants." *Ward v. Charter Oak Fire Ins. Co.,* 579 S.W.2d 909, 910 (Tex.1979). Those remedies include appeals to TWCC appeals panels and, beyond that, suits for judicial review. Finally, we observe the general principle that "appellate courts should not dismiss an appeal for a procedural defect whenever an arguable interpretation of the Rules of Appellate Procedure would preserve the appeal." *Verburgt v. Dorner,* 959 S.W.2d 615, 616 (Tex.1997).

By concluding that CSI's conduct in this case satisfied the mailbox rule, we adopt an interpretation of rule 143.3(e) that both encourages litigants to avail themselves of the mailbox rule and causes that rule to yield just and reasonable results. The TWCC appeals panel's interpretation undermines a principal purpose of rule 143.3(e), causes it to yield unjust and unreasonable results like the one in this case, and is plainly erroneous.

### 3. *Conclusion*

We conclude that the TWCC's mailbox rule is satisfied if a party timely mails its request for review and the request or an identical copy is received by the TWCC within twenty days after the party received the hearing officer's deci-sion. CSI adduced evidence showing that it mailed its request for review to the proper address before the fifteen-day deadline expired and that the TWCC received an identical, faxed copy of that request for review on September 10, 2003, which the appeals panel considered to be the twentieth day after CSI received the hearing officer's decision. Thus, Deese did not demonstrate as a matter of law that CSI perfected its appeal to the TWCC appeals panel late. The trial court could not have properly sustained Deese's second plea to jurisdiction on the ground that CSI failed to exhaust its administrative remedies. We sustain CSI's second issue.

### B. Exclusivity of jurisdiction in Travis County

CSI's first, third, and fourth is-sues address the alternative ground Deese asserted in her second plea to the jurisdic-tion, which was that Travis County district courts have exclusive jurisdiction over pe-titions for judicial review like CSI's. In its fourth issue, CSI contends that the stat-utes relied on by Deese address venue rather than jurisdiction and that Deese consequently waived the argument in the trial court by failing to move to transfer venue in a timely fashion. We sustain CSI's fourth issue.

As Deese points out, the applicable ver-sion of the labor code set forth two sepa-rate schemes to govern judicial review of final TWCC determinations. Aggrieved parties desiring judicial review of issues regarding "compensability for or eligibility for or the amount of income or death benefits" proceeded under a scheme that provided for judicial review under a "mod-ified de novo standard." *Rodriguez,* 997 S.W.2d at 253. Under this scheme, the action could be brought in the county of the claimant's residence. *Id.* (citing TEX. LAB.CODE § 410.252). All other appealable

issues were appealable "to the district court in Travis County under the Administrative Procedure Act for a substantial evidence review." *Id.* "Accordingly, the appropriate judicial review mechanism depends upon the nature of the issue in dispute." *Morales v. Liberty Mut. Ins. Co.,* 241 S.W.3d 514, 517 (Tex.2007). Deese argues that CSI's threshold claim— that the TWCC appeals panel erroneously dismissed CSI's appeal as untimely—had to be brought in Travis County district court under the Administrative Procedure Act. Moreover, Deese contends, this requirement was both mandatory and jurisdictional.

The statutory authorities on which Deese relies are equivocal. Section 410.252 of the labor code, which provides that suits for judicial review of compensability determinations generally must be filed in the claimant's county of residence, is entitled "Time for Filing Petition; *Venue.*" Tex. Lab.Code Ann. § 410.252 (Vernon 2006) (emphasis added). This indication that section 410.252 is a venue provision seems to be contradicted by subsection (c) of that section, which provides for transfer of a suit to a proper court if a court determines "that it does not have jurisdiction to render judgment on the merits of the suit." *Id.* § 410.252(c). The Administrative Procedure Act states that a petition for judicial review of an agency decision "must be filed in a Travis County district court," but the statute does not indicate whether this requirement is a matter of venue or subject-matter jurisdiction. Tex. Gov't Code Ann. § 2001.176(b)(1) (Vernon 2000). Thus, the statutes themselves are inconclusive.

Deese's principal authority that Travis County district courts have exclusive subject-matter jurisdiction over issues not relating to compensability is a decision from the El Paso Court of Appeals that was reversed by the Texas Supreme Court after briefing in this case was completed. *Morales v. Liberty Mut. Ins. Co.,* 169 S.W.3d 485 (Tex.App.–El Paso 2005), *rev'd,* 241 S.W.3d 514 (Tex.2007). In that case, Morales's husband suffered fatal injuries while at work, and Morales filed a claim for workers' compensation benefits through three putative employers. 241 S.W.3d at 515. The TWCC hearing officer and appeals panel ruled against Morales, concluding that her husband had been an independent contractor and not an employee. *Id.* She filed petitions for judicial review in both El Paso County and Travis County. *Id.* The El Paso court dismissed for want of jurisdiction, and the El Paso Court of Appeals affirmed, holding that the issue of employee status had to be litigated in Travis County because it was not an issue of "compensability." *Id.* at 515–16. The supreme court reversed on the ground that employee status is an issue of compensability. *Id.* at 517–19. But in lengthy dicta, it also condemned the assumption that the issue under consideration was one of subject-matter jurisdiction. *See id.* at 516 n. 1 ("The court of appeals, the trial court, and the parties all treat the issue as one of subject-matter jurisdiction, but we have held that it is not."). Although not binding, the *Morales* dicta are persuasive authority in favor of CSI's position on this issue.

The other authorities that Deese marshals in favor of her contention that the two-track judicial-review scheme is jurisdictional are casual references by intermediate courts of appeals. These references were made before the supreme court's decision in *Morales* and without persuasive supporting analysis. *King v. Moores,* No. 13–05–00694–CV, 2006 WL 1920051, at *3 (Tex.App.–Corpus Christi July 13, 2006, no pet.) (mem. op.); *Nichols v. Clements,* No. 07–00–00421–CV, 2000 WL 1341535, at *1

(Tex.App.–Amarillo Sept. 18, 2000, no pet.) (not designated for publication). By contrast, another court of appeals has referred to section 2001.176 of the government code as a "mandatory venue" statute, which supports CSI's position. *In re Hartford Underwriters Ins. Co.*, 168 S.W.3d 293, 295 (Tex.App.–Eastland 2005, orig. proceeding).

■■■ We find the supreme court's dicta in *Morales* persuasive, and we agree with the Eastland Court of Appeals' decision in *Hartford* that Deese's alternative argument in support of dismissal raised an issue of venue instead of subject-matter jurisdiction. Even mandatory venue provisions can be waived. *Kshatrya v. Tex. Workforce Comm'n*, 97 S.W.3d 825, 830 (Tex.App.–Dallas 2003, no pet.). Deese did not timely challenge venue in Dallas County in accordance with Texas Rule of Civil Procedure 86, so she waived any contention that mandatory venue lay in Travis County. *See id.* ("The principal distinction between jurisdiction and venue is that the parties cannot waive a lack of jurisdiction of the subject matter, but either may waive a rule of venue favorable to itself.").

We sustain CSI's fourth issue and conclude that Deese waived any reliance on the venue provision found in section 2001.176 of the government code. Accordingly, we need not address CSI's first and third issues.

## C. Remaining issues

■■■ CSI's fifth issue challenges the dismissal of its suit on constitutional grounds. Because we reverse the dismissal based on our dispositions of CSI's second and fourth issues, we need not address CSI's constitutional challenge. CSI's two remaining issues challenge the trial court's award of attorneys' fees. In CSI's sixth issue, it contends that reversal of the dismissal necessarily entails reversal of the

award of attorneys' fees to Deese under section 408.221(c) of the labor code. That section provides for a fee award to a claimant who has prevailed on an issue on which the insurance carrier seeks judicial review under section 410.302. TEX. LAB.CODE ANN. § 408.221(c) (Vernon 2006). We agree that our reversal of the dismissal also requires reversal of the fee award. Accordingly, we need not address CSI's seventh issue, which challenges the fee award on other statutory grounds.

## IV. CONCLUSION

We reverse the trial court's final judgment and its orders awarding attorneys' fees to Deese. We remand for further proceedings consistent with this opinion.

MORRIS, J. dissenting.

JOSEPH B. MORRIS, Justice, dissenting.

The majority opinion concludes that the Texas Workers' Compensation Commission's interpretation of its own mailbox rule is unreasonable and, therefore, should not be given deference by this Court. I conclude, however, that we must defer to the TWCC's interpretation because it is neither plainly erroneous nor inconsistent with the rule. Therefore, I dissent.

The mailbox rule at issue in this case states that a request for a review by the appeals panel is presumed to be timely filed or served if it is (1) mailed on or before the 15th day after the date of receipt of the hearing officer's decision and (2) received by the commission or other party not later than the 20th day after the date of receipt of the hearing officer's decision. 28 TEX. ADMIN. CODE § 143.3(e). It is undisputed that Combined Specialty Insurance Company mailed its request for a review on or before the 15th day after it received the hearing officer's decision. It

is also undisputed that the mailed request was not received by the TWCC until more than 20 days after CSI received the hearing officer's decision. CSI contends its act of faxing a copy of the request to the TWCC on the 20th day was sufficient to satisfy the second prong of the rule. When the TWCC rejected CSI's request for review on the basis of an untimely filing, it must necessarily have concluded that the faxed copy sent on the 20th day was insufficient to meet the requirements of the rule.

The Texas Supreme Court has held that an administrative agency's interpretation of its own regulation is entitled to deference by the courts. *See Pub. Util. Comm'n of Tex. v. Gulf States Utils. Co.,* 809 S.W.2d 201, 207 (Tex.1991). We must give the agency's interpretation deference unless we determine it is "plainly erroneous or inconsistent with the regulation." *See id.* Our review is limited, therefore, to determining whether the TWCC has interpreted its mailbox rule in a manner that is plainly erroneous or contrary to the plain language of the rule. *See id.* We are not called upon to divine a better interpretation.

While the TWCC's interpretation of its mailbox rule may be restrictive, it is neither plainly erroneous nor inconsistent with the language of the rule. The rule states that, to be timely, the request for a review must be mailed by the 15th day *and* received by the 20th day after receipt of the hearing officer's decision. The TWCC's conclusion that both requirements must be met by the same mailed document is clearly supported by the language of the rule. Under the rule as written, there is simply nothing plainly erroneous or inconsistent in concluding the document received must be the document actually mailed. Moreover, if CSI were allowed to meet the requirements of the rule by fax-

ing a second request for review on the 20th day, the act of mailing a request by the 15th day, as required by the first prong of the rule, would become a requirement without any substantive meaning.

In a portion of its analysis, the majority cites two cases that reject the "same piece of paper" interpretation adopted by the TWCC. *See Stokes v. Aberdeen Ins. Co.* 917 S.W.2d 267 (Tex.1996); *Williams v. Schneiber,* 148 S.W.3d 581 (Tex.App.–Fort Worth 2004, no pet.). Those cases, however, address the application of the mailbox rule found in the Texas Rules of Civil Procedure to the filing of an appeal bond. The standard of review applied in the *Stokes* and *Williams* decisions was entirely different and far more deferential to the party seeking review than the one we must apply here. Rather than examining an agency's interpretation of its own rule, the courts in those cases were charged with determining whether an "arguable interpretation" of the mailbox rule would preserve the appeal. *See Williams,* 148 S.W.3d at 585. Although an arguable interpretation of rule 5 of the Texas Rules of Civil Procedure would allow the deadlines for mailing and receiving a filing to be met by different copies of the same document, this does not render the TWCC's contrary interpretation of its own mailbox rule either plainly erroneous or inconsistent with the rule.

In another portion of its analysis, the majority concedes the TWCC's interpretation of its mailbox rule serves two of three purposes that the majority discerns underlie the rule: establishing a clear date of receipt to act as a trigger for appeals-panel action and maintaining an absolute outside deadline by which the TWCC must receive a request for review. The majority states, however, that the TWCC's interpretation "frustrates" the other purpose of the rule that the majority describes to be

"to give the parties the convenience of filing by mail." It is difficult to understand how refusing to accept a document sent via facsimile for filing would frustrate the parties' convenience of filing by mail. Regardless, what the majority fails to recognize is that the TWCC was not required to adopt a mailbox rule for the parties' convenience. Having chosen to adopt a mailbox rule, the TWCC could limit the rule to serve the agency's purposes. The TWCC's interpretation does not prevent the parties from filing by mail. It simply shifts the risk of the vagaries of the postal system from the agency receiving the filing to the party making the filing. The TWCC had every right to shift the risk in this manner, and nothing in the language of the rule or the purposes behind it prevents it from applying the rule in this way.

The majority opinion's holding that the TWCC's interpretation of its own rule is plainly erroneous gives no deference whatsoever to the agency and is in error. Because the TWCC's interpretation is neither plainly erroneous nor inconsistent with the language of the rule, I would affirm the trial court's decision to grant the plea to the jurisdiction.