Motion for Rehearing Overruled; Opinion issued March 24, 2009 Withdrawn;
Reversed and Remanded and Opinion filed April 30, 2009













Motion for Rehearing Overruled; Opinion issued March 24, 2009 Withdrawn; Reversed and
Remanded and Substitute Opinion filed April 30, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00698-CV

_______________

 

SUE ANN STINSON, Appellant

 

V.

 

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,
GALLAGHER BASSETT SERVICES, INC., AND BELINDA YBARRA, Appellees

                                                                                      
                                                    

On Appeal from the 61st District Court

Harris County, Texas

Trial Court Cause No. 2005-72953

                                                                                                             
                           

 

S U B S T I T U T E   O P I
N I O N  

Appellees= motion for rehearing is
overruled.  The opinion issued on March 24, 2009 is withdrawn.  This
opinion is issued as the substitute.

 

Appellant Sue Ann
Stinson challenges the dismissal of her suit asserting extra-contractual claims
against appellees the Insurance Company of the State of Pennsylvania, Gallagher Bassett Services,
Inc., and Belinda Ybarra.  Stinson contends the trial court erred in
dismissing her suit for want of jurisdiction based on an asserted failure to
exhaust available administrative remedies.  We reverse and remand.

Background

Stinson was working as a flight
attendant on December 16,
2003 during a Continental Airlines flight from Los Angeles
to Honolulu. 
She fell backwards, hit her tailbone and head, and briefly lost consciousness
when the aircraft came to an abrupt stop as it was taxiing for departure from Los Angeles.  The flight
continued as scheduled, and Stinson was examined upon arrival in Honolulu by a doctor who
diagnosed her injury as a concussion and cervical strain.

Stinson returned home to Spring, Texas, and was examined
by Dr. Robert Turner.  He ordered Stinson not to work until January 1,
2004.  Dr. Turner believed that Stinson=s injuries would resolve themselves
without treatment, and that she would reach maximum medical improvement by
February 1, 2004.  

Continental reported Stinson=s injury to Gallagher Bassett, a
third-party administrator for Continental=s workers= compensation carrier, the Insurance
Company of the State of Pennsylvania. 
Gallagher Bassett initially assigned adjuster Denise Anderson to investigate
Stinson=s claim; it later transferred the
claim to adjuster Belinda Ybarra.  The insurance carrier paid Stinson
temporary income benefits for her two-week absence from work.

Stinson began experiencing dizziness,
numbness, and pain shortly after she returned to work in January 2004. 
Stinson met with Dr. Turner again and he referred her to a chiropractor, Dr.
Glenn Helton, who began treating her in January 2004.  Over the next
several weeks, Dr. Helton advised Stinson to ask Dr. Turner to perform certain
diagnostic tests and treatment.  Dr. Turner refused these requests.  

 

In late April 2004, Stinson asked to
change her treating physician of record from Dr. Turner to Dr. Helton.  In
May 2004, Dr. Helton ordered Stinson not to work.  Once Stinson began this
absence from work, the insurance carrier began paying temporary income benefits
to her.  Stinson underwent X-rays and an MRI exam in May 2004, which
revealed cervical spondylosis, cervical disc protrusions, stenosis and annular
tear, and lumbar disc protrusions.

In a letter dated June 15, 2004,
Stinson was informed that adjuster Ybarra had asked  Dr. Zvi Kalisky to
perform an independent medical examination of Stinson scheduled for July 1,
2004.

On June 30, 2004, neurologist Dr.
David Tomaszek reviewed Stinson=s MRI results and examined her.  Dr. Tomaszek wrote a
report on the same date in which he (1) observed that Stinson had not achieved
significant improvement in the six months since her injury; and (2) recommended
that Stinson undergo treatment including physical therapy.  His report
states: AI have spoken to Dr. Helton by phone,
and he has agreed to carry out a cervical flexion/distraction regimen over the
next couple of weeks.  I have also put this woman on a Medrol 6 day
Dosepak and will see her back in mid July.@  The report continues:  AShould her symptoms not improve, I
would recommend transforminal epidural blocks at C4-5 and C5-6 on the right
side . . . .@  The report further states: AUnder the most drastic circumstances
of continued symptomatology . . . discography at C4-5, C5-6, and C6-7 could be
done . . . and if necessary . . . an anterior cervical discectomy and fusion
could be considered.@     

Dr. Helton testified at his
deposition that cervical flexion and distraction is a form of physical therapy. 
The Workers= Compensation Act requires preauthorization for physical therapy
treatments.  See Tex.
Lab. Code Ann. ' 413.014(c)(4) (Vernon 2006).  Dr.  Helton
testified that he and Dr.  Tomaszek requested preauthorization for the
recommended physical therapy.  Dr. Helton also testified that he faxed a
copy of Dr. Tomaszek=s June 30, 2004 report to Gallagher Bassett.

 

After conducting an independent
medical examination of Stinson on July 1, 2004, Dr. Kalisky wrote a report in
which he disagreed with Dr. Tomaszek=s recommendation for Stinson to
receive physical therapy.  Dr. Kalisky opined in his July 1, 2004 report
that A[n]o further treatment is recommended
other than a home-based exercise program.@  Dr. Kalisky  described
Stinson=s status as Apost contusion/strain to the cervical
and lumbar spine superimposed on age-related cervical and lumbar degenerative
spondylosis.  The disk protrusions noted on MRI of the cervical and lumbar
spine probably reflect preexisting degenerative disk disease.@   

Gallagher Bassett sent a first notice
of claim dispute and refusal to pay benefits to Stinson on July 21, 2004. 
This first notice states: ACarrier disputes the cervical and lumbar degenerative
spondylosis as pre-existing and/or an ordinary disease of life.@  The July 21, 2004 notice does
not address or reference the medical necessity of physical therapy.  The
insurance carrier continued to pay Stinson temporary income benefits after July
21, 2004.

Based on the July 21, 2004 notice of
claim dispute, Stinson requested a benefit review conference with the Texas
Workers= Compensation Commission (ATWCC@).[1]  The TWCC
selected Dr. Becky Personett as a designated neutral physician to determine
whether Stinson had reached maximum medical improvement from her injury. 
On August 24, 2004, Dr. Personett examined Stinson and concluded that she had
not reached maximum medical improvement.

The TWCC also arranged for Stinson to
see an orthopedic surgeon, Dr. Richard Larrey, for an independent medical exam
to determine whether Stinson=s December 16, 2003 fall caused her lumbar and cervical
problems, and whether Dr. Tomaszek=s recommended physical therapy was
medically necessary.  Dr. Larrey examined Stinson on September 20, 2004
and reported to Ybarra that Stinson=s injuries from her fall should have
resolved already, and that the requested physical therapy was not medically
necessary.

 

Gallagher Bassett sent a second ANotice of Disputed Issue(s) and
Refusal to Pay Benefits@ to Stinson on September 23, 2004.  This second notice
states: ABased on Commission selected RME
there is no medical necessity for chiropractic treatment, medications other
than over the counter NSAIDS, physical therapy, injection treatment, pain
management treatment, surgical treatment or further diagnostic imaging.@  This second notice does not
address or reference compensability.  The record contains no written
communication by Gallagher Bassett to Stinson before this time denying the
physical therapy recommended by Dr. Tomaszek as being medically unnecessary.

Gallagher Bassett sent a third ANotice of Disputed Issue(s) and
Refusal to Pay Benefits@ to Stinson on October 19, 2004.  This third notice
states:  ACarrier disputes that the compensable injury extends to and includes
cervical disc protrusions and/or herniations, cervical radiculopathy, lumbar
disc protrusions and/or herniations and lumbar radiculopathy.@  This third notice does not
address or reference the medical necessity of physical therapy.

Dr. Personett conducted a second
examination of Stinson on January 11, 2005 and disputed the conclusions of Drs.
Kalisky and Larrey.  Dr. Personett again reported that Stinson had not
reached maximum medical improvement, and opined that Stinson had Acompensable injuries involving the
concussion, the cervical spine, and the lumbar spine that have made a definite
difference in her life since the moment of the injury.@

In February 2005, the insurance
carrier approved and began paying medical benefits for physical therapy.[2]

 

On May 4, 2005, the TWCC conducted a
non-binding benefit review conference.  The disputed issue at the benefit
review conference is listed in the TWCC=s report as follows: ADoes the 12/16/03 compensable injury
extend to and include cervical disc protrusions and/or herniations, cervical
radiculopathy, cervical degenerative spondylosis, lumbar disc protrusions
and/or herniations, lumbar radiculopathy, and lumbar degenerative spondylosis?@  The TWCC adopted Stinson=s position and answered this question
in the affirmative.  Gallagher Bassett rejected the TWCC=s recommendation from the benefit
review conference.  On June 15, 2005, the TWCC held a benefit contested
case hearing to decide the compensability issue addressed at the May 4 benefit
review conference.  The TWCC decided the contested case hearing on
compensability in Stinson=s favor in conformity with the earlier benefit review
conference.  The TWCC signed an order on June 22, 2005 requiring the
insurance carrier Ato pay benefits in accordance with this decision.@  Gallagher Bassett did not
further challenge this order regarding compensability.

Stinson sued the insurance carrier,
Gallagher Bassett, and Ybarra in Harris
 County district court on
November 14, 2005.  Stinson=s original petition lists four causes
of action: (1) violations of the Texas Insurance Code; (2) breach of the common
law duty of good faith and fair dealing; (3) legal malice; and (4) violations
of the Texas Deceptive Trade Practices Act (ADTPA@).   Stinson seeks actual
damages including Athe consequential damages to her economic welfare from the
wrongful denial and delay of benefits; the mental anguish and physical
suffering resulting from this wrongful denial of benefits, and the other actual
damages permitted by law.@  Stinson also seeks exemplary damages, prejudgment
interest, and DTPA treble damages and attorneys= fees.

After their earlier motion for
summary judgment was denied, appellees filed a motion to dismiss Stinson=s claims for lack of subject matter
jurisdiction on May 7, 2007 based on an asserted failure to exhaust available
administrative remedies.  Appellees contend that Stinson was required to
establish the medical necessity of the allegedly delayed treatments as of the
time Dr. Tomaszek first recommended them during the summer of 2004. 
Appellees further contend that Stinson failed to establish the medical
necessity of physical therapy and failed exhaust to her administrative remedies
because preauthorization never was requested for the physical therapy
treatments recommended in Dr. Tomaszek=s June 30, 2004 report.

 

Stinson responded to appellees= motion to dismiss on May 14, 2007,
asserting that she had adequately exhausted her administrative remedies as
evidenced by the TWCC=s signed order of June 22, 2005 rejecting the compensability
challenge and requiring appellees to pay benefits.  Stinson contends that
appellees failed to investigate her workers= compensation claim properly and wrongfully
delayed or denied payment of medical benefits, which delayed her receipt of
physical therapy and other treatment from July 2004 until February 2005. 
Stinson disclaims any intent to predicate her extra-contractual claims on the
medical necessity dispute; instead, she attributes the alleged delay in receipt
of treatment to Gallagher Bassett=s unsuccessful pursuit of the
compensability challenge.  Stinson further disclaims any effort to recover
past wages, actual medical costs, or expenses for treatment.

On June 22, 2007, the district court
signed an order granting appellees= motion to dismiss.  Stinson now
appeals that order and challenges the dismissal of her extra-contractual claims
based upon the trial court=s determination that it could not exercise jurisdiction
because she had failed to exhaust her available administrative remedies.

Stinson asserts on appeal that
preauthorization of physical therapy and other treatment was requested, and
that appellees assented to the medical necessity of Dr. Tomaszek=s recommended course of treatment
once they began paying for physical therapy in February 2005.  According
to Stinson, this assent to the medical necessity of Dr. Tomaszek=s recommended treatment left
compensability as the only disputed issue.  Stinson further asserts that
she had no administrative remedies left to exhaust following the TWCC=s signed order of June 22, 2005
determining compensability in her favor and requiring appellees to pay
benefits. 

Standard of Review

Determining whether a court has
subject matter jurisdiction _ including exhaustion of administrative remedies _ is treated as a question of law and
reviewed de novo.  See Subaru of Am., Inc. v. David
McDavid Nissan, Inc., 84 S.W.3d 212, 222 (Tex. 2002); Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); Kelly v. Am. Interstate Ins.
Co., No. 14-07-00083-CV, 2008 WL 5085138, at *2 (Tex. App.CHouston [14th Dist.] Nov. 25, 2008,
pet. filed) (mem. op., not designated for publication) (citing Tex. Dep=t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004)).

 

A plea to the jurisdiction
challenging exhaustion of administrative remedies under the workers= compensation scheme can rest on the
pleadings, or on evidence.  Combined Specialty Ins. Co. v. Deese,
266 S.W.3d 653, 657 (Tex.
App.CDallas 2008, no pet.) (citing Miranda,
133 S.W.3d at 226); see also Kelly, 2008 WL 5085138, at *2; Schwartz
v.  Ins.  Co. of Penn., 274 S.W.3d 270, 273-74 (Tex.  App.CHouston [1st Dist.] 2008, pet.
denied).

AWhen a plea to the jurisdiction challenges
the pleadings, we determine if the pleader has alleged facts that affirmatively
demonstrate the court=s jurisdiction to hear the case.@  Deese, 266 S.W.3d at
657 (citing Miranda, 133 S.W.3d at 226).  The reviewing court Amust look to the allegations in the
pleadings, liberally construe them in the plaintiff=s favor, and look to the pleader=s intent.@  Kelly, 2008 WL 5085138,
at *2 (citing Miranda, 133 S.W.3d at 226).  AIf the pleadings do not contain sufficient
facts to affirmatively demonstrate the trial court=s jurisdiction but do not
affirmatively demonstrate incurable defects in jurisdiction, the issue is one
of pleading sufficiency and the plaintiffs should be afforded the opportunity
to amend.@  Id. (citing Miranda, 133 S.W.3d at 226-27).

When a plea to the jurisdiction
challenges the existence of jurisdictional facts, we consider relevant evidence
submitted by the parties.  Id.
(citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000)); see also
Deese, 266 S.W.3d at 657.  The standard of review for a jurisdictional
plea based on evidence A>generally mirrors that of a summary judgment under Texas Rule
of Civil Procedure 166a(c).=@ Deese, 266 S.W.3d at 657 (quoting Miranda, 133
S.W.3d at 228).  Under this standard, we credit evidence favoring the
non-movant and draw all reasonable inferences in the non-movant=s favor.  See id. at 659
(citing Miranda, 133 S.W.3d at 228).

Analysis

Workers= compensation benefits may be
disputed _ among other
grounds _ based on (1) compensability of the
injury; and (2) medical necessity of the treatment recommended for a
compensable injury.  See 28 Tex.
Admin. Code __
133.305(a)(1)(B) (2004) (Tex. Workers= Comp. Comm=n, Medical Dispute Resolution _ General), 140.1(1) (2004) (Tex. Workers= Comp. Comm=n, Definitions).  A workers= compensation insurance carrier must
provide written notice of the specific grounds on which it refuses to pay
benefits.  Tex.
Lab. Code Ann. _ 409.021(a)(1), .022(a) (Vernon 2006).

 

Appellees provided three written
notices of dispute regarding Stinson=s claim.  The first and third
notices _ dated July 21, 2004 and October 19,
2004, respectively _ disputed the compensability of Stinson=s injury because they challenged
whether all of Stinson=s cervical and lumbar conditions were attributable to her
fall on December 16, 2003.  The second notice _ dated September 23, 2004 _ disputed the medical necessity of
Dr. Tomaszek=s recommended treatment for Stinson=s cervical and lumbar conditions.

A party must exhaust all
administrative remedies before seeking a judicial remedy when, as here, an
administrative agency has exclusive jurisdiction.  Subaru, 84
S.W.3d at 221.  The exhaustion requirement ensures that the administrative
agency has the opportunity to resolve disputed fact issues within its exclusive
jurisdiction before a court must address those issues.  See Essenburg
v. Dallas County, 988 S.W.2d 188, 189 (Tex. 1998) (per curiam).  Because this
case involves the interplay of two separate disputes C one focusing on compensability and
another on medical necessity C it is helpful to describe the different resolution
procedures that apply here under separate chapters of the Workers= Compensation Act.

A.       
Exhaustion of Administrative Remedies Regarding Compensability 

Chapter 410 of the Workers= Compensation Act addresses disputes
regarding compensability and extent of injury.  This chapter establishes a
four-tier system for the disposition of claims by the TWCC.  Tex. Mut. Ins.
Co. v. Ruttiger, 265 S.W.3d 651, 657 (Tex. App.CHouston [1st Dist.] 2008, pet.
filed).

 

In the first tier, the parties
participate in a non-binding benefit review conference designed to mediate and
resolve disputed issues by agreement of the parties.  Id. (citing Tex. Lab. Code Ann. __ 410.021-.034 (Vernon 2006 &
Supp. 2007)).  In the second tier, a party may seek a contested case
hearing with the TWCC to decide any issues not resolved by agreement or through
the benefit review conference.  Id.
(citing Tex. Lab. Code Ann. __ 410.104, .151-.169 (Vernon 2006 & Supp. 2007)).  In
the third tier, the party who loses at the contested case hearing may seek
review by an administrative appeals panel.  Id. (citing Tex. Lab. Code Ann. __ 410.201-.208 (Vernon 2006 &
Supp. 2007)).  In the fourth and final tier, a party may seek judicial
review of issues regarding final decisions of disputes adjudicated by the
TWCC.  Id.
(citing Tex. Lab. Code Ann. __ 410.251-.308 (Vernon 2006 & Supp. 2007)).[3]

B.       
Exhaustion of Administrative Remedies Regarding Medical Necessity

Certain medical treatments and
services, including physical therapy, require a claimant or health care
provider to seek preauthorization from the insurance carrier under chapter 413
of the Workers= Compensation Act and accompanying regulations.  See Tex. Lab. Code Ann. _ 413.014(c)(4), (d) (Vernon 2006); 28 Tex. Admin. Code _ 134.600(e) (2004) (Tex. Workers= Comp. Comm=n, Preauthorization, Concurrent
Review, and Voluntary Certification of Health Care).

AThe TWCC has jurisdiction over
disputes involving preauthorization of medical care and reimbursement of
medical expenses.@  Kelly, 2008 WL 5085138, at *4 (citing Am. 
Motorists Ins.  Co.  v.  Fodge,
63 S.W.3d 801, 803 (Tex. 
2001)).  AA claimant must exhaust all administrative remedies with the TWCC before
suing an insurer on statutory and tort claims alleging denials, delays,
interruptions, and premature terminations of medical treatment.@  Kelly, 2008 WL 5085138,
at *4 (citing Fodge, 63 S.W.3d at 804, and Pickett v.  Tex.  Mut. 
Ins.  Co., 239 S.W.3d 826, 832 (Tex. 
App.CAustin 2007, no pet.)).

 

Preauthorization requests may be made
by telephone, facsimile, or electronic transmission.  28 Tex. Admin. Code _ 134.600(e)(1).  An insurance
carrier must approve or deny a preauthorization request and provide notice of
its decision to the claimant or health care provider by telephone, facsimile,
or electronic transmission within three working days of receipt of the
request.  Id.
_ 134.600(f)(1), (3)(A).  The
insurance carrier must send written notice of its decision to the employee or
her representative within one working day of the decision.  Id. _ 134.600(f)(4).  A
preauthorization denial must include Athe description or source of
screening criteria used, the principal reasons, and clinical basis for making
the denial . . .@ along with Aplain language notifying the employee of the right to timely
request reconsideration . . . .@   Id. ' 134.600(f)(6)(A), (B).

If an insurance carrier denies preauthorization,
the claimant or health care provider may request reconsideration within 15
working days of receipt of a written denial and must document the
reconsideration request.  Id.
_ 134.600(g)(1).  The insurance
carrier must respond to a request for reconsideration within five working days
of receipt of the request.  Id.
_ 134.600(g)(2)(A).

If reconsideration is denied, a
health care provider or employee may appeal the denial by filing with the TWCC
a request for medical dispute resolution by an independent review
organization.  Id.
_ 134.600(g)(3).  Medical
necessity disputes are categorized as Aprospective@ or Aretrospective.@  28 Tex. Admin. Code _ 133.305(a)(1)(B)(i), (ii).

The parties agree that the dispute at
issue here regarding Dr. Tomaszek=s recommended treatments is a
prospective medical necessity dispute.  Prospective disputes involve
review of the medical necessity of health care requiring preauthorization, and
are reviewed by an independent review organization pursuant to 28 Texas Administrative
Code section 133.308.  Id.
_ 133.305(a)(3).  Prospective
disputes include a provider or injured employee=s dispute of an insurance carrier=s denial of preauthorization under 28
Texas Administrative Code section 134.600 made before provision of the disputed
medical services.  Id.
_ 133.305(a)(3)(A).

 

A request for prospective necessity
dispute resolution must be filed no later than the 45th day after the date the
insurance carrier denied the party=s request for reconsideration of the
denial of preauthorization.  Id. _ 133.308(e)(2) (2004) (Tex. Workers= Comp. Comm=n, Medical Dispute Resolution by
Independent Review Organizations).  The party who fails to timely file a
request for independent review of a medical necessity dispute with the TWCC
waives the right to independent review or medical dispute resolution.  Id. _ 133.308(d), (e).

The independent review organization
must review and render a decision on a prospective necessity dispute by the 20th
day after the independent review organization (1) receives the dispute, or (2)
receives a designated doctor examination if one has been requested.  Id. _ 133.308(o).  A party to a
prospective necessity dispute may appeal the independent review organization
decision by filing a written request for a hearing with the State Office of
Administrative Hearings.  Id.
_ 133.308(u).  A party who has
exhausted administrative remedies and who is aggrieved by a final decision of
the State Office of Administrative Hearings may seek judicial review of the
decision.  Id.
_ 133.308(u)(7).

If the insurance carrier has raised a
compensability dispute, the resolution of a request for review by an
independent review organization will be abated until the compensability dispute
is resolved.  Id.
_ 133.308(f)(7).[4]  The TWCC
may dismiss a request for medical necessity dispute resolution if the dispute
no longer exists.  Id.
_ 133.308(i)(1).  The TWCC cannot
prohibit parties from voluntarily agreeing to pay for medical services that
would otherwise require preauthorization, and any such agreements create
liability for those agreed services on the part of the insurance carrier. 
Tex. Lab.
Code Ann. _
413.014(f) (Vernon 2006).

C.       
Did Stinson Exhaust Administrative Remedies?

1.        
Compensability

It is undisputed that Stinson
exhausted her administrative remedies with respect to compensability under
chapter 410.

 

The carrier challenged compensability
through the second tier of the resolution procedure, a contested case
hearing.  The TWCC hearing officer signed an order on June 22, 2005
requiring appellees to pay benefits based on a determination that the
compensable injury from Stinson=s December 16, 2003 fall encompassed her cervical and lumbar
conditions.  Appellees did not challenge this compensability determination
further by using the procedures available under tier three or tier four.

2.        
Medical necessity of physical therapy

Despite Stinson=s exhaustion of administrative
remedies with respect to compensability, appellees contend that dismissal for
lack of jurisdiction nonetheless was mandated.  Appellees argue that
Stinson was required to exhaust not only the administrative remedies addressing
compensability under chapter 410, but also the administrative remedies
addressing medical necessity under chapter 413.

Specifically, appellees argue that
Stinson failed to request preauthorization of the physical therapy recommended
in Dr. Tomaszek=s June 30, 2004 report as required under the Workers= Compensation Act and accompanying
regulations.  See Tex. Lab. Code
Ann. _ 413.014(c)(4), (d); 28 Tex. Admin. Code _ 134.600(e).  Appellees further
argue that Stinson=s asserted failure to request preauthorization forecloses her
from establishing the medical necessity of physical therapy as of July
2004.  Absent a determination that physical therapy was medically
necessary when first sought in July 2004, appellees argue that Stinson cannot
predicate her extra-contractual claims on a delay in receiving physical therapy
between July 2004 and February 2005.  See Schwartz, 274 S.W.3d at
274 (A>The fact that the . . . surgery w[as]
ultimately authorized does not constitute any type of determination by the
Commission that the initial denial . . . [was] improper.  Therefore, there
does remain a dispute for the Commission to resolve.=@) (quoting In re Tex.  Mut.  Ins.  Co., No.  05-05-00944-CV, 2005 WL 1763562, at *2
(Tex. 
App.CDallas July 27, 2005, orig. 
proceeding) (mem. op.)).

 

Stinson responds that Drs. Helton and
Tomaszek specifically requested that Gallagher Bassett approve Dr. Tomaszek=s treatment plan, and that Gallagher
Bassett was aware of the June 30, 2004 report.  Stinson also relies on In
re Texas Workers= Compensation Insurance  Fund, 995 S.W.2d 335, 337 (Tex. App.CHouston [1st Dist.] 1999, orig.
proceeding [mand. denied]), and Ruttiger, 265 S.W.3d at 656-58, to argue
that the carrier=s assent to physical therapy in February 2005 exhausts administrative
remedies with respect to medical necessity regardless of whether
preauthorization was requested in 2004.  

Under these opinions, when the Commission, claimant,
and carrier agree on the claimant=s
entitlement to compensation benefits, their agreement is binding as a final
determination that the benefits are owed, precluding the need for the claimant
to seek administrative remedies before he can sue for damages arising from the
carrier=s unreasonable delay or denial of benefits.

 

Schwartz, 274 S.W.3d at 274 (citing Ruttiger,
265 S.W.3d at 657-58, and In re Tex. Workers= Comp. Ins. Fund, 995 S.W.2d at 337).

Stinson stresses that the governing
regulations provided for abating a request for determination of medical
necessity by an independent review organization until compensability has been
resolved by a final decision of the TWCC.  See 28 Tex. Admin. Code _ 133.308(f)(7).  By the time
compensability was determined in June 2005, the insurance carrier voluntarily
had been paying for Stinson=s physical therapy for about four months.  Stinson
contends that she was not required to pursue an administrative determination in
2004 concerning the medical necessity of physical therapy for which the carrier
already had agreed to pay by the time compensability was determined in her
favor in June 2005.

 

Resolution of this appeal does not
require choosing between the parties= competing positions regarding the
need to pursue preauthorization in 2004.  Even assuming that Stinson had
to request preauthorization in 2004 as a prerequisite for a suit claiming that
an unwarranted compensability challenge delayed her receipt of Dr. Tomaszek=s recommended treatment until 2005,
we conclude that the evidence submitted to the trial court suffices under the
standard of review to demonstrate such a request.

Dr. Helton was questioned at length
during his deposition about whether preauthorization for physical therapy had
been requested.

Q.       
Do you C did you ever request or did you ever
request preauthorization  for any treatment for Ms. Stinson?

A.       
Did we request treatment for her?  Yes.  Yes.  I basic C yes.  We requested C in other words, we requested
treatment for physical therapy.

*                   
*                   
*

Q.       
. . . The question I=m asking is: Specifically, was there a request for
preauthorization made on behalf of Ms. Stinson for any treatment?

A.       
Uh-huh.

Q.       
Okay.  What specifically was requested in terms of treatment for Ms.
Stinson?

A.       
We requested physical therapy.  And, in fact, Dr. Tomaszek, the
neuro  I referred them to C a lot of C a lot of requests that were made were actually recommended
by the neuro [and] . . . Moran, the orthopedic doc.  Most of the requests
and recommendations were made by those guys. . . .

*                   
*                   
*

Q.       
. . . This is what I=ve marked as Helton Exhibit 2. . . .  This is the report
of Dr. Tomaszek, dated June 30, 2004; is that correct, Dr. Helton?

A.       
I=m sorry.  Dated 30th of >04, yes.

Q.       
Have you seen this report before?

 

A.       
Yes.

Q.       
Okay.  Is this the C the report that lays out sort of what the plan that you and
Dr. Tomaszek formed for Ms. Stinson=s treatment?

A.       
At this particular time, that=s what he was recommending, yes.

Q.       
Okay.  Was there anything about the plan he laid out in this that you
disagreed with?

A.       
No, sir.

Q.       
Did you provide any other written report to Gallagher Bas[s]ett or Ms. Stinson that
would indicate what your plan for treatment was?

A.       
I faxed her this.

Q.       
Okay.

A.       
She got this.

*                   
*                   
*

Q.       
Okay.  If you=ll go to the next page, which is the second one.

A.       
(Complies.)

Q.       
The first three paragraphs in this _ on this page actually address sort of what you=re going to do for her cervical spine
injury.  Is that a fair assessment?

A.       
That=s what he was recommending, yes.

Q.       
Okay.  Did you agree with this plan that Dr. C 

A.       
Yes.

Q.       
Tomaszek put together?

A.       
Yes.

Q.       
Okay.  The first thing is . . . cervical flexion and distraction
regimen.  Can you C is that a form of physical therapy?

A.       
Yes it is.

 

*                   
*         
          *

Q.       
What C what does C what would a request C well, what did your request for this
type of treatment C a request for preauthorization for this type of treatment,
what did that look like?

A.       
I faxed this to them.

Q.       
Okay.  Who is Athem?@

A.       
Oh, Gallagher Bas[s]ett.  Sorry.

Q.       
Okay.  And did that C did you accompany that with a letter or a phone call and
say, Alook, this is C the treatment that=s being outlined is in here@?

A.       
We C we faxed this to them.  These
were the findings from him . . . .

Dr. Helton did not identify the date
on which he faxed Dr. Tomaszek=s June 30, 2004 report to Gallagher Bassett.  During
Stinson=s deposition, reference was made to
the fax code on a copy of Dr. Tomaszek=s June 30, 2004 report indicating
that Gallagher Bassett received a copy of that report by fax on July 12,
2004.  It is not clear from the record whether this fax came from Dr.
Helton or Dr. Tomaszek.

The appellees dispute whether this
evidence establishes a proper preauthorization request.  However, the
standard of review governing this appeal parallels the summary judgment
standard.  Insofar as evidence of jurisdictional facts is at issue, we
must credit evidence favoring the non-movant and draw all reasonable inferences
in the non-movant=s favor.  See Deese, 266 S.W.3d at 659 (citing Miranda,
133 S.W.3d at 228).  Applying this standard of review, we conclude that
the evidence set forth above suffices for purposes of appeal to establish that
preauthorization was requested.[5]

 

The appellees assail this conclusion
on rehearing, contending that (1) the court Adetermined@ that the June 30, 2004 report
constituted a preauthorization request; (2) the June 30, 2004 report lacks
certain details specified under 28 Texas Administrative Code section
134.600(e)(2); and (3) ADr. Helton=s belief he requested preauthorization does not constitute
valid evidence of jurisdiction.@  Appellees assert that ADr. Helton . . . did not provide
Gallagher Bassett with any additional information relating to the allegedly
requested treatment.@  Appellees further assert that A[p]laintiff failed to present any
evidence to suggest Dr. Helton made any effort to expound on the June 30th
report such that Gallagher Bassett could have even identified it as a
preauthorization request.@

The appellees= real quarrel is with the standard of
review that controls our disposition.  When they assert that Athe Appellant failed to furnish any evidence
which suggests anyone, including Dr. Helton, supplemented the June 30th report
with the missing elements,@ the appellees ask the court to infer a lack of specific
details from unlimited testimony that Dr. Helton and others requested
preauthorization for physical therapy.  We are required to draw reasonable
inferences in favor of the non-movant, not against her.  There is no one
required means of transmitting a preauthorization request; written and oral
communications both suffice.  See 28 Tex. Admin. Code _ 134.600(e)(1).  Based on
unlimited testimony that preauthorization was requested by multiple persons, it
is reasonable to infer that such requests were specific enough in conjunction
with the June 30, 2004 report to provide the needed details.  See, e.g.,
Hand v. Dean Witter Reynolds Inc., 889 S.W.2d 483, 493 n.6 (Tex. App.CHouston [14th Dist.] 1994, writ
denied) (rejecting appellees= contention that investor=s request to broker to purchase oil
option contracts was insufficiently specific because investor did not set a
time for expiration of the options; A[f]or the purposes of this appeal, we
accept appellant=s position that [the investor] . . . did attempt to place an
order.@).  

 

The record contains no evidence of a written
denial of preauthorization from the carrier.  See 28 Tex. Admin.
Code _ 134.600(f)(1), (4), (6).  The
notice dated September 23, 2004 is a notification of refusal to pay rather than
a written denial of preauthorization.  See Tex. Lab. Code ' 409.021(a)(2), .022(a).  Even
if this notice could be construed generously as a written denial of
preauthorization, the notice does not comply with the timetables for a written
denial of preauthorization.  See 28 Tex. Admin. Code ' 134.600(f)(3), (4).  The claimant=s deadlines for seeking
reconsideration by the carrier and then filing a request for medical dispute
resolution by an independent review organization are keyed to the claimant=s receipt of a timely written denial
of preauthorization.  See 28 Tex. Admin. Code __ 133.308(d), (e)(2); 134.600(g)(1),
(2)(A), (3).  Absent receipt of a timely written denial of
preauthorization, Stinson=s deadlines did not begin to run and the provision regarding
waiver of the right to independent review or medical dispute resolution is
inapplicable.  See 28 Tex. Admin. Code ' 133.308(e).

These circumstances distinguish
Stinson=s situation from cases in which the
claimant (1) reached an agreement with the carrier regarding compensability or
other disputes, but (2) nonetheless failed to exhaust administrative remedies
with respect to medical necessity by failing to submit denied preauthorization
requests for administrative review.  Cf. Kelly, 2008 WL 5085138, at
*9 (AConsequently, even if appellees had
expressly agreed to provide Kelly with medical benefits, they would still
retain the right to require preauthorization of the spinal fusion under the
Act.  Because Kelly, like the Pickett claimant, did not submit any
denied preauthorization requests to the TWCC, he has failed to exhaust his
administrative remedies under the Act.@); see also Schwartz, 274
S.W.3d at 274-76; Pickett, 239 S.W.3d at 836-37.  Here, the record
contains no written denial of preauthorization upon which further steps in the
administrative review process were predicated.  The circumstances here
also are distinguishable from those in which a claimant begins the
administrative medical dispute resolution process but does not pursue that
process to completion.  Cf. Malish v. Pac. Employers Ins. Co., 106
S.W.3d 744, 746 (Tex. App.CFort Worth 2003, no pet.).

 

This case is more closely analogous
to Ruttiger, 265 S.W.3d at 655-56, in which the carrier originally
denied medical and income benefits.  The parties later entered into a
benefit dispute agreement stipulating that ARuttiger sustained a compensable
injury in the form of a hernia and that Ruttiger suffered a disability for a
specific period of time.@  Id.  Ruttiger asserted extra-contractual
claims stemming from the insurance carrier=s delay in paying medical and income
benefits.  Id. at 656.  The First Court of Appeals held that
the trial court had jurisdiction because the benefit dispute agreement
constituted a final determination that benefits were due, and Athere is no suggestion in the record
that, following the parties= entry into the Benefit Dispute Agreement, any dispute
remained regarding what specific benefits Ruttiger was entitled to recover.@  Id. at 658 n.8.

Here, too, there is no indication
that any dispute remained for administrative resolution with respect to the
medical necessity of physical therapy after February 2005, when the carrier
assented to this treatment and began paying for it.

 

Medical necessity of physical therapy
as of July 2004, when it was first requested, no longer was at issue because
the carrier did not send a written denial in response to Stinson=s preauthorization requests. 
There were no further administrative review procedures for Stinson to exhaust
as to that issue because her obligations were keyed to the receipt of a written
preauthorization denial that was not sent.[6]  Medical
necessity of physical therapy from February 2005 forward no longer was at issue
in light of the carrier=s assent.  See Tex. Lab. Code ' 413.014(f) (AThe division may not prohibit an
insurance carrier and a health care provider from voluntarily discussing health
care treatment and treatment plans . . . and may not prohibit an insurance
carrier from certifying or agreeing to pay for health care consistent with
those agreements.  The insurance carrier is liable for health care
treatment and treatment plans . . . that are voluntarily preauthorized and may
not dispute the certified or agreed-on preauthorized health care treatment and
treatment plans . . . at a later date.@); see also In re Tex. Workers= Comp. Ins. Fund, 995 S.W.2d at 337 (AWe find no requirement under the Act
which would require a claimant to continue through . . . the disposition
process if the parties agree on the claimant=s compensation benefits at an earlier
stage in the process.@).

We sustain Stinson=s issue regarding dismissal of her
case for want of jurisdiction based upon the exhaustion of remedies doctrine.

Conclusion

Because Stinson exhausted her
available administrative remedies regarding appellees= disputes as to compensability and
medical necessity, the trial court had subject matter jurisdiction over the
case.  See Subaru, 84 S.W.3d at 221-22; Mayhew, 964 S.W.2d
at 928.  Thus, the trial court erred by dismissing her suit for want of
subject matter jurisdiction.  The trial court=s order of
dismissal for want of jurisdiction is reversed, and the cause is remanded for
further proceedings consistent with this opinion.

 

 

 

/s/        William
J. Boyce

Justice

 

 

 

 

 

Panel consists of Justices Yates,
Seymore, and Boyce.














[1]          
The Texas Workers= Compensation Commission was replaced in 2005 by the
Texas Department of Insurance, Division of Workers= Compensation.  See Tex. Lab. Code Ann. _ 402.001 (Vernon 2006).





[2]          
Dr. Helton administered physical therapy to Stinson approximately 49 times
without pay between July 21, 2004 (the date of Gallagher Bassett=s first notice of dispute and refusal to pay benefits)
and February 2, 2005 (the date of Stinson=s
first physical therapy treatment with Kinetics Plus).





[3]          
Several sections of the Workers= Compensation
Act pertaining to disputes were amended effective September 1, 2005.  See
Act of June 1, 2005, 79th Leg., R.S., ch. 265, __
3.146, .153-.208, 2005 Tex. Sess. Law Serv. 469, 533-43 (to be codified at Tex.
Lab. Code Ann. __ 409.022(c), 410.021-.308).  None of these amendments
substantively changed the dispute process described in Ruttiger.  See
id.  





[4]          
From January 2, 2002 until December 31, 2006, this regulation stated: A[I]f the carrier has raised a dispute pertaining to
liability for the claim, compensability, or extent of injury . . . the request
for [review of a medical necessity claim] will be held in abeyance until those
disputes have been resolved by a final decision of the [TWCC].@  28 Tex. Admin. Code _ 133.308(f)(7).  We decide this case under the
regulations in place in 2004.  See 28 Tex. Admin. Code _ 133.308(a)(1) (2009) (Tex. Dep=t of Ins., Div. of Workers= Comp., MDR by Independent Review Organizations).





[5]          
To the extent that appellees challenge a failure to plead this jurisdictional
fact in the original petition, the proper remedy is a remand and an opportunity
to replead.  Kelly, 2008 WL 5085138, at *2 (AIf the pleadings do not contain sufficient facts to
affirmatively demonstrate the trial court=s
jurisdiction but do not affirmatively demonstrate incurable defects in
jurisdiction, the issue is one of pleading sufficiency and the plaintiffs
should be afforded the opportunity to amend.@).





[6]          
We do not address exhaustion of administrative remedies under circumstances in
which the carrier has denied preauthorization in conformity with chapter 413
and the accompanying regulations, and thereby placed the onus on the claimant
to undertake further steps in the administrative review process.